

275 Madison Avenue, 10th Floor
New York, NY 10022
Direct: 646-589-8731
Email: dfreed@hpylaw.com

August 5, 2022

**VIA ELECTRONIC MAIL (gene@generosen.com) and PACER**
Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   Aventura Technologies, Inc. v. Convergint Technologies LLC
            EDNY Case Number: 2:22-cv-004241-BMC

Dear Judge Cogan:

      This office, along with Greenberg Traurig LLP represents defendant Convergint Technologies LLC ("Convergint") in the above-captioned matter. Pursuant to Your Honor's Individual Practices, we write to request a pre-motion conference seeking leave to move to compel arbitration and dismiss the proceedings without prejudice. Plaintiff and Convergint entered a Product Reseller Agreement ("PR Agreement") which governed the transaction(s) between them, and which contains an unambiguous mandatory arbitration clause requiring the Parties to arbitrate any and all claims arising out of the PR Agreement before the American Arbitration Association in Chicago, Illinois. Plaintiff's claims here indisputably arise out of and relate to the Products provided pursuant to the PR Agreement. As a result, Convergint seeks permission to move to compel arbitration and dismiss Plaintiff's lawsuit without prejudice pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. § 3 and § 4.[1] In the unlikely event the Court declines to direct this case to arbitration Convergint requests permission to move in the alternative to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

**Case Background**
In March 2019, Convergint entered into a subcontract with non-party Acme Electric whereby Convergint would provide an electronic security system for a renovation project at the US Government's Bureau of Engraving and Printing in Ft. Worth, TX ("BEP Project"). Pursuant to the subcontract, Convergint was required to provide security equipment manufactured and supplied by Plaintiff (the "Aventura Equipment"). Plaintiff delivered the Aventura Equipment to Convergint in October 2019, pursuant to the PR Agreement, signed by Aventura. As part of a US Government project, the Aventura Equipment was required to be US manufactured. Aventura knew this, and purposely labeled the equipment as "Made in U.S.A." In November 2019, Convergint became aware for the first time that Aventura was under investigation by the US Attorney for illegally selling Chinese-made equipment, falsely labeled as US made. Shortly

---

[1] By letter dated July 22, 2022, and in accordance with 9 U.S.C. § 4, Convergint's counsel provided Plaintiff's counsel with a copy of the signed PR Agreement containing the arbitration agreement and stated that Convergint intended to move to compel arbitration in accordance with the agreement's terms if Plaintiff did not voluntarily dismiss this action in favor of arbitration before AAA in Chicago, Illinois. Plaintiff's counsel never responded.



thereafter, Convergint put Aventura on notice that the equipment likely did not comply with the Buy-American Act, violated the PR Agreement, and was non-conforming. Convergint heard nothing from Aventura until the filing of the instant lawsuit.

**The Dispute is Subject to a Mandatory Arbitration Provision**
The PR Agreement contains a mandatory arbitration clause which states in relevant part, "[a]ny dispute, controversy or claim arising out of or relating to this Agreement, or the breach thereof, or the Products provided hereunder, including any question regarding this Agreement's existence, validity, or termination, shall be submitted to an arbitration panel convened in Chicago, Illinois."

The FAA, which applies here, "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 4 of the FAA mandates that courts "shall" compel arbitration where an agreement to arbitrate exists. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985); see also *Brown v. Coca-Cola Enterprises, Inc.,* No. 08-CV-3231, 2009 U.S. Dist. LEXIS 35798 at *5 (E.D.N.Y. Apr. 28, 2009) ("It is well-settled that the FAA generally requires that court resolve issues of arbitrability in favor of arbitration."). In determining arbitrability, courts in the Second Circuit "consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Anderson v. Beland (In re Am. Express Fin. Advisors Sec. Litig.)*, 672 F.2d 113, 128 (2d Cir. 2011). When these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc.* 470 U.S. at 218.

*Aventura and Convergint Have Entered into a Valid Agreement to Arbitrate*
When assessing agreements to arbitrate, "courts…must give effect to the contractual rights and expectations of the parties." "In this endeavor…the parties' intentions control." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015). Courts consider "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive…and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* The PR Agreement contains an unequivocal and broad mandatory arbitration clause, which was clearly communicated to Aventura and accepted by Aventura when it signed and returned the PR Agreement.

*Aventura's Claims Falls Within the Scope of the Arbitration Clause*
In determining whether a claim falls within the scope of the parties' arbitration agreement, courts focus on the allegations in the complaint. If the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them. *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20-21 (2d Cir. 1995) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987). Further, clauses providing for arbitration of "any dispute or controversy arising out of or relating to [an] agreement," are "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Mehler v. Terminix Intern. Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000).



Plaintiff's claim that it sold and delivered to Convergint the Aventura Equipment under the PR Agreement and is now owed payment clearly arises out of the PR Agreement and therefore falls within the mandatory arbitration clause. Pursuant to 9 U.S.C.S. § 4, the Court should dismiss the proceedings without prejudice and compel arbitration to take place in Chicago, Illinois pursuant to the PR Agreement. "[T]he district court has discretion in determining whether to stay or dismiss the case pending arbitration." *See Lewis v. ANSYS, Inc.,* 2021 U.S. Dist. LEXIS 60898 at *9 (S.D.N.Y. Mar. 30, 2021); *citing Charter Commc'ns, Inc. v. Fargin,* No. 20 CIV. 7049 (KPF), 2021 U.S. Dist. LEXIS 33579 at *14 (S.D.N.Y. Feb. 23, 2021) (*citing Benzemann v. Citibank N.A.,* 622 F. App'x 16, 18 (2d Cir. 2015)). Here, there is little point to staying this action in court particularly where it is not entirely clear this Court will have subject matter jurisdiction over any resulting arbitration award. *See Badgerow v. Walters,* 142 S. Ct. 1310, 212 L.Ed.2d 355 (2022) (stating "look through" approach for finding federal jurisdiction in petitions under Section 4 does not apply to petitions under Sections 9 and 10 of FAA).

**Convergint Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2)**
If the Court does not compel arbitration, it should, in the alternative, dismiss the case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Convergint is incorporated under the laws of the State of Delaware and headquartered in Schaumburg, Illinois. As such, there cannot be general jurisdiction over Convergint. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)

There also is not specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773, 1781 (2017). Where a non-domiciliary defendant purchased goods from a New York domiciled Plaintiff, courts evaluate (1) the physical presence of the defendant in New York; (2) the execution by defendant of a contract in New York; (3) the risk of loss as it effects the New York transaction; and (4) performance of the contract in New York. *Marble Tile Imports v. Mihelich & Assocs., Inc*. 1993 U.S. Dist. LEXIS 6574, at *4 (S.D.N.Y. 1993). Here, Convergint's acquisition of the Aventura Equipment was subject to a purchase order created by Convergint personnel in Texas. The Equipment was shipped directly to Convergint in Texas for use on the BEP Project in Ft. Worth, TX. No employee or agent of Convergint came to New York to negotiate, sign, or execute any agreements with Aventura or to inspect the equipment. Plaintiff's claims thus do not arise out of any New York related activity by Convergint and therefore there cannot be specific jurisdiction over Convergint here.

Convergint respectfully seeks a pre-motion conference to set a briefing schedule for its motion to compel or dismiss. Convergint will be able to file its motion within a reasonable time.

                                            Respectfully submitted,

                                             /s/ David E. Freed
                                            David E. Freed
                                            Hawkins Parnell & Young, LLP

cc:    Nicholas A. Corsano, Esq.
        corsanon@gtlaw.com
        Gene Rosen, Esq.
        gene@generosen.com